# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON TODD, | : | Civil No. 1:25-CV-1336 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I.    Statement of Facts and Procedural History

This case, which was initially referred to us on September 4, 2025, comes before us for a legally mandated screening review of the plaintiff's amended complaint. (Doc. 25). The *pro se* plaintiff, Jason Todd, recently filed a spate of lawsuits in this Court, including the instant case.[1] Todd's initial complaint in this lawsuit was a cryptic document drafted in a stream of consciousness style which presumed some vast pre-existing knowledge on the reader's behalf of other unrelated events.

---

[1] Todd v. Derry Township, 1:25-cv-435; Todd v. Commonwealth, 1:25-cv-1336; Todd v. Disability Rights of Pennsylvania, 1:25-cv-1337.

In this pleading, Todd sued a disability rights organization, Disability Rights Pennsylvania, (DRP), Derry Township, the Commonwealth of Pennsylvania, the Pennsylvania Department of Human Services (DHS), and the Pennsylvania Human Relations Commission (PHRC), agencies of state government. The fairly meager factual recital which followed in support of Todd's original complaint alleged that Todd was assaulted by a man named Shoemaker in September of 2024. (Doc. 1, ⁋ 9). In October of 2024, Shoemaker pleaded guilty to a state harassment charge but, according to Todd, "no ADA or victim support followed." (Id., ⁋ 11). Todd then asserted that he submitted "sealed suicide risk documentation (Doc. 283) to federal court" in December 2024. (Id., ⁋ 12). What this documentation may be, what the nature of this altercation was, and how this documentation supports any federal claim remained a mystery since nothing was included in the complaint which provided further content, context, or coherence to this pleading. Todd then stated that he lodged otherwise unidentified formal complaints with the DRP, DHS and the PHRC but they closed his complaints. (Id., ⁋ 13).

On the basis of this barebones factual recital, Todd then averred in a cursory manner that the defendants violated the Americans with Disabilities Act, 42 U.S.C. §12203; the general civil rights statute, 42 U.S.C. §1983; the Protection and Advocacy for Individuals with Mental Illness Act, (PAIMI) 42 U.S.C. §§10801-

10805; as well as the Supremacy Clause, Due Process Clause, and Equal Protection Clauses of the United States Constitution. (Id., ¶¶ 16-28). Relying upon these enigmatic averments, Todd demanded $20,000,000 in damages; sweeping declaratory and injunctive relief; the removal of officials from their jobs; and the appointment of a "federal monitor" over PHRC and DRP. (Id., at 9).

Todd was granted leave to proceed *in forma pauperis* subject to a screening review of this complaint and also filed a pleading consenting to proceed before a magistrate judge. (Doc. 8). Therefore, since no other party has been served, for screening purposes we have sufficient party consent to proceed. See Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995). Following a legally mandated screening review of this pleading, we dismissed Todd's complaint without prejudice to affording the plaintiff one final opportunity to file an amended complaint stating a claim upon which relief may be granted. (Docs. 15, 16).

Todd has now filed a pleading styled as an amended complaint, (Doc. 25), but this characterization of his pleading is something of a misnomer. In fact, this amended complaint names entirely new defendants, a Pennsylvania Capitol police office, a magisterial district judge, and unnamed officials of the Pennsylvania Human Relations Commission (PHRC). (Id., ¶¶ 4-6). The amended complaint then alleges in a summary manner that, in December of 2024, following his submission of ADA

trauma evidence, a police officer "pursued retaliatory charges" against Todd when he arrested him for terroristic threats. (Id., ¶¶ 7-9). Further, according to Todd, the magisterial district judge wrongfully ordered him fingerprinted and processed, and the PHRC failed to investigate his complaints regarding the treatment he had received. (Id., ¶¶ 10-11). While Todd provides no further context concerning these events in his amended complaint, state court records disclose that Todd was charged on July 31, 2025, with harassment and terroristic threats and is scheduled for a preliminary hearing on November 17, 2025. Commonwealth v. Todd, MJ-12104-CR-0000506-2025. Thus, the criminal case that Todd cast as retaliatory is still ongoing, entails alleged conduct which occurred seven to nine months after the underlying September 2024 state case which forms the basis for his claims, and involved persons and law enforcement agencies who were wholly unrelated to that initial state case.

Upon consideration, for the reasons set forth below, the amended complaint will be dismissed.

## II.    Discussion

### A.    Screening of *Pro Se* Complaints–Standard of Review

This court has an ongoing statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, we are obliged to review the

complaint to determine whether any claims are frivolous, malicious, or fail to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v.</u> <u>Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of</u> <u>Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic</u> <u>Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u>, at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts

that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard

when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In considering whether a complaint fails to state a claim upon which relief may be granted the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached]

documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment"). However, the court may not rely on other parts of the record in determining whether to dismiss a complaint or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal guideposts, as discussed below, this amended complaint still fails as a matter of law for several reasons.

## B. **This Complaint Will Be Dismissed**

### 1. **The Complaint Violates Rule 8.**

At the outset, dismissal of this complaint is warranted because this pleading still fails to comply with Rule 8's basic injunction that, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." It is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P. 8(a)(2), and that each averment be 'concise, and direct.'" Scibelli v. Lebanon County, 219 F. App=x 221, 222 (3d Cir. 2007) (citing Fed.R.Civ.P. 8(e)(1)). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is not only of an unwieldy length, but it is also largely unintelligible", Stephanatos v. Cohen, 236 F. App=x 785, 787

10

(3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F.App=x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F.App=x 513 (3d Cir. 2008); Stephanatos, 236 F.App=x at 787; Scibelli, 219 F.App=x at 222;  Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n. 1 (5th Cir. 2005).

Dismissal under Rule 8 is also proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]," Binsack v. Lackawanna County Prison, 438 F. App=x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, 441 F.App=x 109 (3d Cir. 2011). Similarly, dismissal is appropriate in "those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. at 110 (quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995) (quotations omitted); see also Tillio v. Northland Grp. Inc., 456 F. App'x 78, 79 (3d Cir. 2012). Further, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. See, e.g., Radin v. Jersey City Medical Center, 375 F. App=x 205 (3d Cir. 2010); Moss v. United States, 329 F. App'x 335 (3d Cir. 2009) (dismissing illegible complaint); Earnest v. Ling, 140 F. App=x 431 (3d Cir. 2005) (dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks

to sue"); <u>Oneal v. U.S. Fed. Prob.</u>, CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006) (dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

In its current form, this amended complaint remains a barebones pleading bereft of well-pleaded facts. Simply put, this amended complaint still leaves "defendants having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App=x 158 (3d Cir. 2011). Therefore Rule 8 calls for dismissal of the complaint in its entirety.

## 2. <u>The Eleventh Amendment Shields the PHRC from Liability under 42 U.S.C. §1983.</u>

Further, to the extent that Todd is trying to lodge a §1983 civil rights claim for damages against the PHRC, an agency of state government, this claim fails for at least two reasons. As we have previously explained in a similar case:

> First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States....", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania, and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa. Cons. Stat. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, see 42 Pa. Cons. Stat. § 8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Cons. Stat. § 8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to claims involving the PHRC. As the Third Circuit has observed:

> The Eleventh Amendment provides a state with immunity "from liability for damages in a suit brought in federal court by one of its own citizens." Dellmuth v. Muth, 491 U.S. 223, 229 n. 2, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). This immunity extends to state agencies. See MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001). While states can waive their Eleventh Amendment immunity, see id., Pennsylvania has not done so, see 42 Pa. Cons.Stat. § 8521(b). The PHRC is an administrative commission within the executive department of the Commonwealth of Pennsylvania and, as such, it shares in the Commonwealth's Eleventh Amendment immunity. See 43 Pa. Stat. Ann. §§ 956–7.

Opoku v. Educ. Comm'n for Foreign Med. Graduates, 574 F. App'x 197, 201 (3d Cir. 2014).

13

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the PHRC . . . , as a state agency or arm of state government since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. <u>Will v. Michigan Dep't. of State Police</u>, 491 U.S. 58, 71 (1989). In sum, [the plaintiff's] federal civil rights claims for . . . damages against the PHRC, . . . [is] barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore, since the PHRC . . .  cannot be sued in this fashion in federal court, this complaint should be dismissed.

<u>Ally v. PHRC</u>, No. 1:19-CV-1268, 2019 WL 3933661, at \*4–5 (M.D. Pa. July 23, 2019), <u>report and recommendation adopted,</u> No. 1:19-CV-1268, 2019 WL 3928790 (M.D. Pa. Aug. 19, 2019). Therefore, both constitutional and statutory considerations bar § 1983 claims against this state agency. Accordingly, these claims must be dismissed.

### 3. <u>Todd Has Not Secured a Favorable Resolution of His State Criminal Case.</u>

This amended complaint, which seeks to sue officials for conduct relating to an ongoing criminal case, also fails as a matter of law because it rests on a fatally flawed legal premise. At bottom, the plaintiff appears to seek to bring a civil rights action premised, in part, on claims of false arrest and malicious, retaliatory prosecution without showing that his state criminal case has been resolved in a

14

fashion that was favorable to him.

This he cannot do.

Quite the contrary, it is well settled that an essential element of a civil rights malicious prosecution claim is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a malicious prosecution or false arrest claim in a setting where he has not achieved a favorable outcome in the underlying state case, the plaintiff's claim fails as a matter of law. The Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994) (quoting Memphis Cmty. School Dist. v. Stachura, 477 U.S. 299, 305, 106 S. Ct. 2537, 91 L.Ed.2d 249 (1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483 (quoting Carey v. Piphus, 435 U.S. 247, 257–58, 98 S. Ct. 1042, 55 L.Ed.2d 252 (1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the court held that the inmate's claim could not proceed because one requirement of malicious prosecution is

that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in <u>Heck</u> had not successfully challenged his criminal conviction. <u>Id.</u>

<u>Hector v. Watt</u>, 235 F.3d 154, 155–156 (3d Cir. 2000).

Thus, "our precedents are clear that § 1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment but are entitled to relief only if they are innocent of the crime for which they were prosecuted." <u>Washington v. Hanshaw</u>, 552 F. App'x 169, 173 (3d Cir. 2014) (citing <u>Hector</u>, 235 F.3d at 156). Therefore, "a plaintiff claiming malicious prosecution must prove *actual* innocence as an element of his *prima facie* case." <u>Steele v. City of Erie</u>, 113 F. App'x 456, 459 (3d Cir. 2004).

In this case, it is evident that this state criminal prosecution did not terminate favorably for the plaintiff since Todd's charges are still pending at this time. <u>Commonwealth v. Todd</u>, MJ-12104-CR-0000506-2025. In the absence of a favorable termination of the state criminal case, this federal civil rights malicious retaliatory prosecution lawsuit cannot proceed. In short, this complaint is based upon the fundamentally flawed legal premise that the plaintiff can sue the state for malicious prosecution even though he has not prevailed in the underlying state case. Since this premise is simply incorrect, this complaint fails as a matter of law. <u>See</u> <u>Galloway v. Kane</u>, No. 1:15-CV-1007, 2015 WL 3953112, at *5–6 (M.D. Pa. June 29, 2015).

16

### 4.  <u>The Magisterial District Judge is Immune from Liability</u>

Additionally, the magisterial district judge who presided over the preliminary hearing in Todd's state case is also immune from civil liability. To the extent that the plaintiff seeks in this complaint to hold this judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon prior criminal case, it is well-settled that the judge is individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, <u>Mireless v. Waco</u>, 502 U.S. 9, 13 (1991); prosecutors, <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, <u>id.</u> at 423 n.20 (grand jurors); <u>Harper v. Jeffries</u>, 808 F.2d 281, 284 (3d. Cir.1986) (parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Todd from maintaining this civil action against the judge named in this complaint since the judge is entitled to judicial immunity for their actions in these prior proceedings and

is absolutely immune from personal liability for any judicial acts. See, e.g., Arsad v. Means, 365 F. App'x 327 (3d Cir.2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09–922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010), aff'd, 447 F. App'x 397 (3d Cir. 2011). See also Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir.2007) ("A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority;

rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

This judicial immunity applies to Section 1983 actions like the lawsuit brought here, see Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), and embraces both requests for damages, as well as costs and attorney's fees. See Corliss v. O'Brien, No. 3:05–CV–0347, 2005 WL 2334792 (M.D. Pa. 2005), aff'd, 200 F.App'x. 80 (3d Cir. 2006). This judicial immunity also expressly extends to Pennsylvania magisterial district court judges. Indeed, as the United States Court of Appeals for the Third Circuit has aptly observed, there is no distinction "between judges of courts of limited and general jurisdiction" when applying the judicial immunity doctrine, Figueroa v. Blackburn, 208 F.3d 435, 441 (3d Cir. 2000), and "[t]he doctrine of judicial immunity applies equally to courts of limited jurisdiction, such as district justices, as to courts of general jurisdiction." Martin v. Bicking, 30 F.Supp.2d 511, 512 (E.D. Pa. 1998); see also Schuler v. City of Chambersburg, 641 F.Supp. 657, 659 (M.D. Pa. 1986); Horne v. Farrell, 560 F.Supp. 219, 222–23 (M.D. Pa. 1983). Moreover, this judicial immunity specifically applies to judicial actions ruling on bail requests, making probable cause determinations, and presiding over preliminary hearings in state criminal cases. See, e.g., Williams v.

McCleaf, No. 1:19-CV-85, 2019 WL 472311, at *5 (M.D. Pa. Jan. 17, 2019), report and recommendation adopted, No. 1:19-CV-0085, 2019 WL 462128 (M.D. Pa. Feb. 6, 2019); Pokrandt v. Shields, 773 F.Supp. 758 (E.D. Pa. 1991); Fox v. Castle, 771 F.Supp. 411 (M.D. Pa. 1977). Therefore, the magisterial district judge should be dismissed as a defendant.

> ### 5. The Amended Complaint Fails to State a Plausible Retaliation Claim.

Todd's amended complaint also fails to state a plausible retaliation claim. On this score, Todd's barebones pleadings allege that he was the victim of an assault in September 2024 which was investigated by Derry Township Police. His assailant was prosecuted and convicted, but Todd was displeased with the victim services he received and alleges that he lodged ADA complaints in December 2024. Seven months later, in July of 2025, Todd was arrested by a separate police agency, the Pennsylvania Capitol Police, and was charged with harassment and terroristic threats. This separate state case remains pending. On the basis of these disparate events involving different and distinct actors Todd alleges a claim of retaliation against him for exercising his ADA rights.

In our view, these allegations are legally insufficient to state a plausible retaliation claim. As a general rule, to make out a *prima facie* case of retaliation a plaintiff must show (1) that he engaged in protected activity; (2) that he suffered an

adverse action; and (3) that there was a causal connection between the protected

activity and the adverse action. Carvalho-Grevious v. Delaware State Univ., 851 F.3d

249, 257 (3d Cir. 2017).

The third and final element of a retaliation claim—causation—is frequently

the most hotly contested issue in these cases. This element typically can be pleaded

and proven in one of two ways. In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the alleged retaliatory action, or (2) a pattern of
> antagonism couple with timing to establish a causal link. See Krouse v.
> American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson
> v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence
> of that proof the plaintiff must show that from the "evidence gleaned
> from the record as a whole" the trier of fact should infer causation.
> Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

On this score "[t]he mere fact that adverse . . . action occurs after [a protected

activity] will ordinarily be insufficient to satisfy the plaintiff's burden of

demonstrating a causal link between the two events." Robinson v. City of Pittsburgh,

120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington N. &

Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006).

However, the Third Circuit has stated that if the timing of the allegedly retaliatory

action is " 'unusually suggestive' of retaliatory motive" a causal link may be inferred.

<u>Krouse</u>, 126 F.3d at 503 (citing <u>Robinson</u>, 120 F.3d at 1302). In some cases, the appeals court has found a temporal proximity of two days demonstrated a causal link, <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989), but has found that a period of two months did not. <u>See</u> <u>Williams</u>, 380 F.3d at 760.

Here, the events which Todd seeks to stitch together into a retaliation claim are separated by some seven months and involve different and distinct actors. Without further well-pleaded facts, the unusually suggestive temporal proximity which is essential to a retaliation claim is simply lacking here. Therefore, these retaliation claims also fail as a matter of law and will be dismissed.

### 6.  **<u>The Amended Complaint Will Be Dismissed with Prejudice</u>**.

We previously recognized that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, acting out of a surfeit of caution, we afforded Todd leave to amend his initial complaint, but to no avail. This amended complaint still fails to state a claim upon which relief may be granted and it appears that no further form of artful pleading may save this this complaint. Accordingly, the amended complaint will be dismissed

with prejudice.

### III.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, the plaintiff's complaint is dismissed with prejudice and the plaintiff's motion to transmit information to various federal agencies, (Doc. 27), is DENIED.

An appropriate order follows.

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: October 17, 2025